**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | ) | |
| *Plaintiffs,* | ) | |
| v. | ) | CASE NO. 1:26-CV-100 |
| UNITED PARCEL SERVICE, INC., | ) | **JURY TRIAL DEMANDED** |
| *Defendant,* | ) | |
| HAND HELD PRODUCTS, INC., | ) | |
| *Movant-Intervenor,* | ) | |

**HAND HELD PRODUCTS, INC.'S UNOPPOSED MOTION TO INTERVENE**

Non-Party Hand Held Products, Inc. ("HHP") respectfully moves to intervene in the above-captioned action as of right pursuant to Federal Rule of Civil Procedure 24(a)(2), or alternatively, with permission of the Court pursuant to Federal Rule of Civil Procedure 24(b)(1). Neither Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC ("Plaintiffs") nor Defendant United Parcel Service, Inc. ("UPS") oppose the motion, and, as described below, the requirements for intervention are satisfied under both Rules 24(a)(2) and 24(b)(1). HHP therefore respectfully requests that the Court grant its unopposed motion for leave to intervene.

## I. INTRODUCTION

In this case, Plaintiffs have asserted five patents against UPS. Dkt. 1. In its Complaint, Plaintiffs describe certain accused products with references to "Honeywell" and/or Honeywell websites. *Id.* at ¶¶ 100, 102, 116, 118. Plaintiffs specifically describe, for example, one accused product, the DIAD 6, as "a Honeywell-customized mobile computer," (*id.* at ¶ 100) and include screenshots of the "Honeywell CN85 Handheld Computer" (*id.* at ¶ 102).

HHP is a wholly owned subsidiary of Honeywell International Inc. and is the entity responsible for the design, manufacture[1], and supply of certain of the accused products to UPS, including the DIAD 5 and DIAD 6 identified in the Complaint. Dkt 1, ¶ 36; *see also* **Exhibit A** ("Declaration of William Munnerlyn in Support of Hand Held Products, Inc.'s Unopposed Motion to Intervene"). HHP has also agreed to indemnify UPS in connection with those products. *See id.* Under these circumstances, this case presents a justiciable controversy as to HHP.

Given its role as in designing and arranging the manufacture of certain of the accused products, HHP has a substantial interest in the litigation and is in the best position to defend

[1] For the avoidance of doubt, HHP is responsible for the manufacture of the accused DIAD 5 and DIAD 6 products, which are made by a third-party manufacturer.

infringement claims directed to those products. "[I]t is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (citation omitted); *see also Chandler & Price Co. v. Brandtjen & Kluge, Inc.*, 296 U.S. 53, 55 (1935) (noting a manufacturer's intervention in infringement action against a customer is "necessary for the protection of its interest"). The Federal Circuit has further observed that, in customer suits such as this one, the manufacturer is frequently the party best suited to defend against infringement claims. *See, e.g., Katz*, 909 F.2d at 1464 (upholding stay of patent infringement suit against customers, stating "in reality, the manufacturer is the true defendant in the customer suit."); *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989) (explaining the "customer suit exception" exists because a manufacturer has a "presumed greater interest in defending its actions against charges of patent infringement").

As explained in greater detail below, HHP's motion is timely, its participation will not prejudice any existing party, and intervention will not delay the proceedings. For these reasons, HHP respectfully requests that the Court grant its unopposed motion to intervene, allowing HHP to participate in the litigation and address the infringement allegations concerning its products.

## II. BACKGROUND

Plaintiffs filed their Complaint against UPS in this action on January 15, 2026. Dkt. 1. Plaintiffs assert five patents against UPS: United States Patent No. 7,199,715 ("the '715 Patent"), United States Patent No. 7,336,176 ("the '176 Patent"), United States Patent No. 7,623,439 ("the '439 Patent"), United States Patent No. 8,594,122 ("the '122 Patent"), and United States Patent No. 11,363,564 ("the '564 Patent") (collectively, "the Asserted Patents"). This case is still in its early stages; UPS's deadline to answer the Complaint is March 30, 2026.

Plaintiffs accuse UPS of infringing the certain of the Asserted Patents on the allegation that "Defendant makes, uses, and/or sells devices configured to support paging in a wireless network, such as the DIAD 5 and 6 mobile devices [], which are configured to support 3GPP LG and/or 3GPP 5G NR." Dkt. 1, ¶ 36; *see also id.* at ¶ 27 ("Defendant makes, uses, and/or sells devices that include embedded wireless 802.11n, 802.11ac and 802.11ax compliant chipsets configured to use MIMO and OFDM with a cyclic shift diversity feature compliant with the respective 802.11 standard, such as the UPS Delivery Information Acquisition Device 6 ("DIAD 6")"), at ¶ 32 ("Defendant makes, uses, and/or sells devices that include embedded wireless 802.11ac compliant chipsets configured to use transmit announcement indications in the very high throughput ("VHT") sounding protocol required for beamforming, among other features, compliant with the 802.11ac standard, such as the DIAD 6"). HHP is responsible for the design and manufacture of the DIAD 5 and DIAD 6 ("the Accused DIAD Products"), which it supplies to UPS. Accordingly, HHP's participation in this action will facilitate more complete and efficient discovery concerning the technology at issue. *See* Ex. A. In particular, HHP is likely in possession of the documents and other evidence most directly relevant to the Accused DIAD Products.

Further, UPS has also tendered an indemnity demand to HHP with respect to certain of the Asserted Patents based on certain contractual agreements, including Master Purchase Agreements, for the Accused DIAD Products. *See id.* HHP will therefore be injured if not permitted to intervene in this action.

## III. LEGAL STANDARD FOR INTERVENTION

Federal Rule of Civil Procedure 24 provides two independent bases for intervention: intervention as a matter of right (under Rule 24(a)(2)) and permissive intervention (under Rule 24(b)(1)). Rule 24(a)(2) provides "[o]n timely motion, the court must permit anyone to intervene

who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a)(2). Rule 24(b)(1) provides "[o]n a timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1).

## IV. INTERVENTION IS APPROPRIATE

As explained below, HHP meets the requirements under Rule 24 under both standards. Accordingly, the Court should grant HHP's Motion to Intervene.

### A. HHP's Motion to Intervene Should Be Granted as a Matter of Right

The Fifth Circuit has established a four-factor test for intervention under Rule 24(a)(2):

> [An] intervenor must show that "(1) the application ... [was] timely"; (2) that it has "an interest relating to the property or transaction which is the subject of the action"; (3) that it is "so situated that the disposition of the action may, as a practical matter, impair or impede [its] ability to protect that interest"; and, finally, (4) that its interest is "inadequately represented by the existing parties to the suit."

*Field v. Anadarko Petroleum Co*., 35 F.4th 1013, 1017 (5th Cir. 2022) (quoting *DeOtte v. State*, 20 F.4th 1055, 1067 (5th Cir. 2021)). Each factor is met here.

#### *1. HHP's Motion Is Timely*

HHP's Motion to Intervene could not have been more prompt—this Motion being filed on the same day as UPS's responsive pleading and shortly after UPS notified HHP of its indemnity claim. This action is still in its early stages, "[d]iscovery has yet to begin and the scheduling conference has yet to occur." *LED Wafer Sols. LLC v. Samsung Elecs. Co., Ltd.*, W-21-CV-00292-ADA, 2021 WL 5450145, at *3 (W.D. Tex. Nov. 22, 2021) (finding timeliness requirement met); *TOT Power Control, S.L. v. AT&T Mobility LLC*, 6:21-CV-107-ADA, 2021 WL 4712691, at *2

(W.D. Tex. Oct. 8, 2021) (recognizing courts even consider four or five months delay since the complaint was filed as "not an unreasonable amount of time").

This prompt motion likely precludes any prejudice to existing parties from delay—there was no delay whatsoever. *See Edwards v. City of Houston,* 78 F.3d 983, 1002 (5th Cir. 1996). To the extent Plaintiffs are able to point to prejudice in some form or fashion, "no material prejudice would be caused to the existing parties by [HHP] not seeking to intervene as soon as possible after learning of their interest in this case." *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, 2:17-CV-235-JRG, 2017 WL 6059303, at *4 (E.D. Tex. Dec. 7, 2017) (citing *Edwards* for the recognition that "[t]his factor is concerned only with the prejudice caused by the applicants' delay, not that prejudice which may result if intervention is allowed").

Conversely, a denial of its Motion would severely prejudice HHP as "[Plaintiffs'] accusations against [UPS] cast a cloud over [HHP's] [DIAD products], and because [UPS] may not adequately represent [HHP], this Court's refusal to permit [HHP] to ward off that cloud here may prejudice [HHP's] business interests. *TOT Power*, 2021 WL 4712691, at *2. As discussed in greater detail below, absent intervention here, HHP's interests would be prejudiced. Lastly, no unusual circumstances exist here; this Motion to Intervene is the straightforward, predictable result of an indemnity agreement between a customer accused of infringing certain patents through their use of another's products and the entity responsible for the design, manufacture, and supply of said products. *See LED Wafer*, 2021 WL 5450145, at *3.

As such, the Court should find HHP to have met the timeliness requirement of Rule 24. *See id.*; *TOT Power*, 2021 WL 4712691, at *2.

### *2. HHP Has an Interest in the Property or Transaction at Issue*

"[T]he interest 'test' is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Ross v.*

*Marshall*, 426 F.3d 745, 757 (5th Cir. 2005) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994)). "To qualify for mandatory intervention, [HHP's] interest must be direct, substantial, and legally protectable, and go beyond a generalized preference that the case come out a certain way." *TOT Power*, 2021 WL 4712691, at *2 (cleaned up). Here, HHP has a substantial, direct, and legally protectable interest because Plaintiffs' complaint puts at issue products manufactured by HHP and supplied to UPS, which courts repeatedly hold is sufficient to demonstrate a protectable interest under Rule 24(a). *See, e.g., U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 6:09-cv-448-JDL, 2010 WL 11488729, at *2 (E.D. Tex. May 10, 2010) ("[A] manufacturer . . . faces the loss of its customer base and reputation as a result of patent infringement allegations."); *LED Wafer*, 2021 WL 5450145, at *3. Furthermore, "[HHP] need not have an interest in all [a]ccused [p]roducts to survive a Rule 24 analysis. *LED Wafer*, 2021 WL 5450145, at *3 (citing *Uniloc 2017 LLC v. AT&T Mobility LLC*, No. 2:18-cv-00514, 2019 WL 1773117, at *3 (E.D. Tex. Apr. 23, 2019)); *see also TOT Power*, 2021 WL 4712691, at *3 ("Ericsson need only have '*an* interest' – not a 'complete' or even 'dominating' interest.") (emphasis in original).

Furthermore, the indemnity agreement between UPS and HHP "is sufficient evidence of [HHP's] immediate financial interests at stake" and "[HHP's] sales and reputation are also at risk in light of the infringement allegations." *See LED Wafer*, 2021 WL 5450145, at *3; *U.S. Ethernet Innovations*, 2010 WL 11488729, at *2 ("Courts have held that beyond the injury that might arise from having to indemnify customers, a manufacturer such as Intel faces the loss of its customer base and reputation as a result of patent infringement allegations."); *TOT Power*, 2021 WL 4712691, at *3 ("The TOT complaint's reference to Ericsson BTSs puts Ericsson's customer base and reputation at risk—"a risk that is only magnified by its indemnity obligation to AT&T."). Here, as in myriad cases before, (1) that HHP manufactures and supplies to UPS the Accused DIAD

Products, (2) that allegations of infringement could affect HHP's sales and customer relationships, and (3) HHP is obligated to indemnify UPS for the Accused DIAD Products, HHP has a direct, substantial, and legally protectable interest sufficient under Rule 24. *See* Ex. A.

***1. Disposition of This Case May Impair HHP's Ability to Protect Its Interests***

The burden on the movant to show impairment is "minimal." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1253 (10th Cir. 2001). In near factual parity with *TOT Power*, HHP's interest may be impaired because "(1) [HHP's] obligations impute responsibilities for potential money judgments; (2) adverse rulings could impact [HHP's] relationships with its customers; and (3) an adverse judgment could also create precedent that could be used against [HHP] and its customers in other proceedings related to [HHP's] equipment, software, and technology," including the Accused DIAD Products. *See* 2021 WL 4712691, at *3. Upon consideration of "the totality of the circumstances," this Court should find that, as the manufacturer and supplier of certain accused products, HHP's ability to protect its interest may be impaired or impeded without intervention, as this Court has done previously. *See id.* ("As the manufacturer of some of the accused products, an adverse ruling could certainly "impact[ ] [its] relationships with other retail customers" and trigger any indemnity obligations similar to the obligation that it owes to AT&T.") (citation omitted); *see also Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 424 (5th Cir. 2002) (the potential "stare decisis effect of an adverse judgment constitutes a sufficient impairment to compel intervention") (citation omitted).

***3. UPS Cannot Adequately Represent HHP's Interests***

As a preliminary matter, this factor "is satisfied if the applicant shows that the representation of his interest 'may be' inadequate." *Texas v. United States*, 805 F.3d 653, 661 (5th Cir. 2015); *Team Worldwide*, 2017 WL 6059303, at *6 ("The movants' burden to satisfy this requirement is a light one.") (citing *Texas*, 805 F.3d at 661). Again, this Court's analysis of this

factor in *TOT Power*, in agreement with the *Uniloc* court, guides the analysis here, and leads to the same result. *See TOT Power*, 2021 WL 4712691, at *3 (citing *Uniloc*, 2019 WL 1773117). Although UPS and HHP "may have the same ultimate objective—avoiding or minimizing liability, there is a real possibility that those interests may diverge" as UPS's positions and defenses could align with manufacturers or suppliers of other accused products. *See id.* "More importantly, while [UPS] may have some knowledge relevant to [HHP's Accused DIAD Products]," "[HHP] likely possesses 'superior knowledge of how the accused [DIAD Products] are configured and operate' and is thus better situated to understand and defend its own products." *Id.* (citations omitted). As the *Uniloc* and *TOT Power* courts held, "[n]o more is required to meet this element of Rule 24(a)." *Id.* There is no reason to depart from this precedent here.

Accordingly, the Court should find that HHP meets each of the four requirements necessary for Rule 24(a)(2), and grant HHP's Motion to Intervene as of right. *See TOT Power*, 2021 WL 4712691, at *4; *LED Wafer*, 2021 WL 5450145, at *5; *Team Worldwide*, 2017 WL 6059303, at *6.

### B. Alternatively, HHP's Motion to Intervene Should Be Granted Under Rule 24(b)

Although HHP has adequately met the four factors necessary for intervention under Rule 24(a)(2), HHP equally satisfies the factors for permissive intervention under Rule 24(b). Under this analysis, the intervenor must have "'a claim or defense that shares with the main action a common question of law or fact' and that the motion for intervention be timely filed." *TOT Power*, 2021 WL 4712691, at *4. Both factors are present here.

As set forth *supra*, HHP's motion is timely filed; it is filed at or around the time of filing of UPS's Answer in this action, and prior to any discovery or even the scheduling conference in this action. HHP moved promptly upon UPS's election of indemnification under the supply

agreement between the HHP and UPS. *See id.* (finding the motion timely where fact discovery had not yet opened and claim construction briefing had not begun).

As in *TOT Power*, for example, where both AT&T (the defendant) and Ericsson (the intervenor) raised defenses of non-infringement, invalidity, and others in their respective answers, each of which contained "numerous common questions of law and fact," the same applies here. *See id.* UPS's and HHP's defenses to Plaintiffs' allegations that the Accused DIAD Products infringe certain of Plaintiffs' patents, common questions of law and fact include whether the claims asserted in the relevant patents are valid and enforceable, and whether the Accused DIAD Products (as manufactured and supplied by HHP, and as used by UPS) infringe the relevant patents. *See id.* (citing *Team Worldwide*, 2017 WL 6059303, at *7). Equally, for reasons set forth *supra*, granting intervention "will not unduly delay or prejudice the adjudication of the original parties' rights. *See LED Wafer*, 2021 WL 5450145, at *5 (citing Fed. R. Civ. P. 24(b)).

Accordingly, the Court should alternatively find permissive intervention appropriate here.

## V. CONCLUSION

For the reasons set forth above, the Court should grant HHP's Motion to Intervene. Pursuant to Rule 24(c), HHP's responsive pleading is attached hereto as **Exhibit B**.

The undersigned hereby certifies that, pursuant to Local Rule CV-7(G), HHP has conferred with counsel for Plaintiffs and UPS, and both Plaintiffs and UPS indicated that they do not oppose the foregoing motion

Dated: March 30, 2026

Respectfully Submitted,

*By: /s/ Rodney Miller*
Rodney Miller

Texas Bar No.: 24070280
**WOMBLE BOND DICKINSON (US) LLP**
1331 Spring Street NW, Ste. 1400
Atlanta, GA 30309
T: 404-879-2435
Email: Rodney.Miller@wbd-us.com

Daniel M. Attaway (*PHV forthcoming*)
Delaware Bar No. 5130
Alexander P. Wharton (*PHV forthcoming*)
Delaware Bar No. 7304
**WOMBLE BOND DICKINSON (US) LLP**
1313 N. Market Street, Ste 1200
Wilmington, DE 19801
T: (302) 252-4320
Email: Daniel.Attaway@wbd-us.com
Email: Alexander.Wharton@wbd-us.com

James E. Dority (*PHV forthcoming*)
South Carolina Bar No. 104627
**WOMBLE BOND DICKINSON (US) LLP**
550 S Main St., #400
Greenville, SC 29601
T: (864) 255-5400
Email: James.Dority@wbd-us.com

***ATTORNEYS FOR MOVANT / INTERVENOR***
***HAND HELD PRODUCTS, INC.***

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was filed electronically on March 30, 2026, in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service.

*By:* *Rodney Miller*
Rodney Miller